## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DOUGLAS L. MANLEY,                              )
                                                )
                         Plaintiff,          )
                                                )
vs.                                             )
                                                )
DANIEL CONN,                                    )
WEXFORD HEALTH SOURCES, INC.,                   )
JAY ROBERT PRITZKER,                            )
ROB JEFFRIES,                                   )
RACHELL DODD,                                   )
PHIL MARTIN,                                    )
DEBBIE KNAUER,                                  )
ADEWALE KUFORIJI,                               )
DAVID POOR,                                     )
GLENN BABICH,                                   )
TERRI EVANS,                                    )
KIM STEPHENS,                                   )
SHEILA IKHANYAN,                                )
TERESA GLENDENNING,                             )
PENNY ECKEL,                                    )
RENAE SWITZER                                   )        Case No. 23-cv-3146-DWD
WENDY RODRIGUEZ,                                )
J. WILLIAMS,                                    )
BENJAMIN LEWIS,                                 )
JOHN DOE DEPOSA,                                )
JANE DOE GOWIN,                                 )
JASON OBERLINK,                                 )
MARIAH WELCH STEADMAN,                          )
ZACH BEAN,                                      )
JOHN DOE RICE,                                  )
CALEB J. MASON,                                 )
LANCE ELLINGTON,                                )
KAYCEE GOSNELL,                                 )
MIRAMONY RAYBURN-CHENAULT,                      )
HILARY GURLEY,                                  )
M. NORD,                                        )
                                                )
                   Defendants.        )

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Douglas L. Manley, a former inmate of the Illinois Department of Corrections (IDOC) who is now on parole, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was incarcerated at Robinson Correctional Center. (Doc. 1). Plaintiff alleges that the Defendants violated his rights in a wide variety of ways by denying needed medical care and retaliating against him when he attempted to secure the needed care.

Plaintiff's has applied to proceed *in forma pauperis* ("IFP") in this action, so his Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915(e)(2)(B). Under Section 1915(e)(2)(B), the Court is required to screen complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915(e)(2)(B)(i-ii). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

# The Complaint

The Court begins by noting that Plaintiff's complaint is 58 pages in length, it names 31 defendants, and it is accompanied by hundreds of pages of exhibits. Immediately, this begs the question if the complaint is short and plain. Nevertheless, Plaintiff is a pro se

litigant so he is afforded broad deference, and the Court reviewed his pleading to determine if he may have presented viable claims.

Plaintiff's complaint raises a variety of medical issues while at Robinson.  He complains about waiting nearly ten months for dental procedures, and then of never receiving dentures, he complains of many issues with access to the catheters he needed on a daily basis, he complains of the lack of a specialist visit with a urologist for the entire 15 months of his incarceration, he complains of shoulder and neck pain, he complains of cellulitis in his legs and feet on at least two occasions, and he complains of alleged retaliation and false discipline.  His complaint is divided into four major sections—a section that recounts his grievance efforts; a section that provides a factual narrative; a section that identifies legal theories by 'count'; and a section on the relief sought.

An exhaustive recitation of the factual allegations for this particular complaint is unnecessary.  The Court has closely read the complaint to identify the most prominent and viable claims for relief.  The Court will focus in this review on issues with Plaintiff's access to catheters.  While he mentions bouts of cellulitis and dental issues, he does not clearly associate these claims with individuals who failed or refused to treat him (for example, he does not name a dentist, nor does he identify who he specifically asked for dental care).  Section 1983 liability is premised heavily on the personal liability for individual actions, so the mention of a potentially serious medical issue without specifics on efforts to seek care, or the outcome of care is insufficient.  As to Plaintiff's allegations about neck/shoulder pain, a pinched nerve, and the need for a neurology consult—these claims are freestanding from the catheter concerns, and from the majority of the

allegations in the complaint.  These allegations will be severed into a separate case and will not be analyzed further in this complaint.

Prior to his incarceration, Plaintiff was diagnosed with a collapsed bladder and enlarged prostate.  (Doc. 1 at 28).  A urologist instructed him to use 14 French catheters at least three times per day, or as needed.  Plaintiff was supposed to have a follow-up appointment with his urologist, in January of 2022 to see if his condition had improved or if he should consider other treatment, but he missed the appointment because he was in county jail awaiting a remand to the IDOC.  Plaintiff was admitted to the IDOC on February 4, 2022, at Stateville Correctional Center.  Plaintiff arrived at Robinson around February 25, 2022.

On March 25, 2022, Defendant Gowin told Plaintiff that they were out of the 14 French catheters he used because Defendants Evans and Martin failed to order enough, or to place the order in time.  Gowin directed Plaintiff to reuse the catheters he already had, though he informed her he could not do that.  Plaintiff completely ran out of catheters on March 27, 2022, at 6a.m..  At 6p.m. he complained to staff that he was in pain because he needed to urinate.  Defendant Stephens told him he would have to wash his used catheters with soap and water so he could reuse them.  Defendants Switzer and Eckel agreed, even though he told the three that the catheter packaging explicitly said not to reuse the product.  Defendant Bean, a sergeant was present but refused to help. Defendant Stephens simply told him that if he got an infection they would treat it with antibiotics.

On March 28, 2022, Plaintiff returned to the sick call line in the morning in severe pain because he had not urinated in over 26 hours. Defendant Evans went to a local medical facility and returned with ten catheters. (Doc. 1 at 34). Plaintiff wrote an emergency grievance about the issue, but on March 29 Defendant Dodd deemed it a non-emergency.

Around April 4, 2022, Plaintiff sent his grievance for processing, and Defendant Ellington conferred with Defendant Evans about the access to catheters. Ellington marked the grievance received on April 21, 2022. Plaintiff also tried to write a letter to Defendant Dodd on April 27 about his issues, but she only responded to part of his concerns and indicated she had conferred with Defendant Martin about it.

On April 28, 2022, Plaintiff saw Defendant Dr. Ikhanyan who assured him she would look into scheduling a bladder exam. On May 18, she provided a written response to Plaintiff's query that stated his external consult had been approved and was to be scheduled. (Doc. 1 at 35).

On May 16, 2022, the medical unit ran out of the lubricant jelly that was used with catheters and Defendant Gowin gave Plaintiff three packets of antibiotic cream. Plaintiff alleges Evans and Martin had failed to order the jelly packets, and he was forced to go 52 hours without urinating before more jelly packets arrived on May 18, 2022. (Doc. 1 at 35-36).

Plaintiff added concerns about this incident to a previous grievance, and he transmitted it to the ARB. Defendant Knauer returned the grievance and instructed Plaintiff to follow the appropriate procedures at his institution. He alleges Knauer should

not have done this because the grievance gave her notice of an emergency, which she should have investigated.  (Doc. 1 at 36).

On May 20, 2022, Plaintiff met with Martin and Evans about catheter issues, and he also tried to inform them that Defendant Ellington had threated to retaliate against him.  Martin refused to intervene in any retaliation, and Plaintiff alleges that as a result he did not get moved to a new cell.[1]

Plaintiff further alleges that due to Ellington's retaliation, he was held in segregation from June 1-3, 2022.  While in segregation, on June 3, Defendant Rice purposefully deprived Plaintiff of his catheters from 7:30a.m. to 2:30p.m..  (Doc. 1 at 37).  When it was time for Plaintiff's segregation release on June 3, Rice gave him the catheters in the presence of Defendant Lewis, and he admitted to having them all along.  Lewis did not reprimand Rice.  Plaintiff also alleges Lewis violated his rights by giving him a seven-day restriction on recreation after a disciplinary hearing had been conducted.[2]

On July 4, 2022, Defendants Glendenning and Deposa refused to give Plaintiff catheters unless he exchanged used catheters.  They insisted this was a policy, and a written rule of the medical unit and Wexford.  On July 5, 2022, Defendant Stephens also refused a catheter without an exchange, but later in the day Stephens gave Plaintiff two catheters and told him he needed to follow the exchange rule.  (Doc. 1 at 39).

---

[1] In the allegations about Ellington's retaliation, Plaintiff writes as though he gave more information earlier in the complaint about retaliation, but the only information he gave earlier about Ellington was that Ellington received one of his grievances for review.  (Doc. 1 at 36-37).  It is not apparent to the Court what the basis is for a retaliation claim against Ellington.

[2] Plaintiff does not give any information about the nature of a disciplinary hearing, or any punishment he received other than Lewis's seven-day recreation restriction.

On July 8, 2022, Plaintiff grieved the catheter exchange "rule" to Defendant Chenault, but he either did not get a response or was not satisfied with the response he got, so on August 15, 2022, he sent the grievance to the ARB.  (Doc. 1 at 39).

On August 25, 2022, Plaintiff decided to throw away his used catheters because his cellmates were complaining about the health hazard and stench from keeping them in the cell.  (Doc. 1 at 40).  That night Defendant Stephens refused to give him catheters because he did not have any to exchange.

Stephens again refused catheters on August 27, 2022, because Plaintiff did not have any used catheters to trade-in.  Plaintiff alleges Stephens further acted in retaliation by summoning Defendant Williams, who threatened and intimidated him about the rules.  Stephens refused catheters a third time on August 28, 2022, and informed Williams of an issue.  (Doc. 1 at 41).  Williams escorted Plaintiff to segregation and threatened to place him in segregation if he would not follow the catheter exchange rule.  However, after the verbal threats Williams brought Plaintiff back to the medical unit and ordered Stephens to give him catheters.  Plaintiff opted not to go to the treatment line that night for fear of Williams and Stephens.

On September 1, 2022, Plaintiff spoke with Defendants Dodd and Martin during a gallery tour.  He informed them of issues with the catheter exchange rule and asked for them to install a biohazard disposal box in the living unit.  Martin rejected his concerns about the exchange rule, and Dodd said a biohazard box could only be installed if it did not pose a security risk.  A box was never installed.

On September 29, 2022, Plaintiff saw Dr. Babich for a swollen leg and foot, as well as shoulder pain.  (Doc. 1 at 43).  Dr. Babich ordered x-rays and gave medication for Plaintiff's pain, but Plaintiff alleges Babich did not follow-up on his care.  Plaintiff saw Babich again via video on October 13 for swelling and cellulitis.  He does not say what, if anything, Babich did for these concerns, and instead says Babich discussed the necessity of the catheter exchange program.

On September 28, 2022, Defendants Glendenning, Mason (a correctional officer), and Steadman (a sergeant) refused catheters because Plaintiff did not have any to exchange.  Plaintiff asked Mason for a grievance form, and he alleges that Glendenning then retaliated against him for getting a grievance by filing a disciplinary report against him.  (Doc. 1 at 45).  On October 11, 2022, Defendant Oberlink found Plaintiff guilty of the ticket without hearing his side of the story, and on October 17, Defendant Dodd affirmed this finding.[3]

At an October 12, 2022, meeting, Defendant Martin would not confirm the date for outside visits Plaintiff believed he should have for his shoulder and bladder.  (Doc. 1 at 46).

On November 19, 2022, Plaintiff informed Defendant Stephens that he was experiencing extra pain inserting his catheters, and she refused to help him.  (Doc. 1 at 48).

---

[3] Plaintiff did not give details about the disciplinary sanctions received for this infraction.

On November 22, 2022, Defendant Mason imposed a new rule on Plaintiff about his call pass, and then issued him a disciplinary ticket.  Plaintiff alleges the disciplinary ticket was issued out of retaliation for a prior grievance against Mason.  (Doc. 1 at 48).  In further retaliation, Plaintiff alleges that on November 27, 2022, Mason and Steadman disciplined him for having a TV that they previously gave him.  (Doc. 1 at 48-49).

Plaintiff alleges that on December 1, 2022, Defendant Stephens retaliated against him by writing him a disciplinary ticket.  The ticket was expunged as unfounded at the disciplinary hearing.  (Doc. 1 at 49-50).

Amidst the issues set forth above, on November 6, 2022, Plaintiff wrote a letter to Defendant Daniel Conn, Wexford's Chief Executive Officer, about his medical issues at Robinson.  (Doc. 1 at 47).  He got a generic assurance three months later that staff was qualified and dedicated to his medical needs.  He wrote a second letter on March 1, 2023, and got a response reminding him to use appropriate procedures to request medical attention at the prison.

In the "conclusion" section of the Complaint, Plaintiff alleges that Defendants Pritzker and Jeffreys are liable because in their leadership roles they are responsible for the provision of adequate medical care in the IDOC.  (Doc. 1 at 53).  Plaintiff alleges that Defendants Conn, Pritzker, and Wexford have failed to provide adequate care, as evidenced by the *Lippert* litigation.  He alleges that he left Robinson on May 26, 2023, but he has suffered emotional distress, sleep loss, and trouble walking, lifting, or performing other daily tasks.  He alleges the Defendants knew of his medical needs and refused to meet them, and they also retaliated against him for seeking needed care.

Plaintiff seeks a permanent injunction[4] concerning the access to medical care for inmates, as well as compensatory and punitive damages.  (Doc. 1 at 57-58).

Based on the allegations in the Complaint, the Court will designate the following claims:

**Count 1:** **Eighth Amendment deliberate indifference claim against medical providers (Defendants Martin, Evans, Stephens, Glendenning, Eckel, Switzer, Gowin, and Deposa) who refused or delayed catheters or catheter supplies;**

**Count 2:** **Eighth Amendment deliberate indifference claim against the non-medical prison staff (Dodd, Williams, Lewis, Steadman, Bean, Rice, Mason) for their involvement in denying catheters;**

**Count 3:** **Eighth Amendment deliberate indifference claim against grievance officials for their handling of related grievances (Knauer, Ellington, Chenault);**

**Count 4:** **Eighth Amendment deliberate indifference claim against Defendants Jeffreys, Pritzker, or Conn for their involvement in providing healthcare at Robinson;**

**Count 5:** **First Amendment retaliation claim against Defendants Williams, Steadman, Mason, Ellington, Stephens and Glendenning for their alleged actions taken in retaliation for Plaintiff's verbal or written requests for care;**

**Count 6:** ***Monell* claim against Wexford Health Sources, Inc. for their alleged failure to supply adequate care at Robinson;**

**Count 7:** **Eighth Amendment deliberate indifference claim against Defendants Dr. Babich, Mr. Martin, Rachel Dodd, Daniel Conn, or Wexford Health Services, Inc., concerning the provision of care for Plaintiff's neck/shoulder/pinched nerve issues (Doc. 1 at 31-32; 43).**

---

[4] Plaintiff has been released from IDOC, so it is highly unlikely he will be able to seek any permanent injunctive relief in this case.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

<u>**Preliminary Dismissals**</u>

Plaintiff named Defendants Rodriguez, Kuforiji, Gosnell, Gurley, and Nord as defendants in this action, but there were not clear and individualized factual allegations against these individuals in the statement of claim, so these individuals are dismissed for failure to state a claim.  *See e.g., Black v. Lane*, 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994) (a claim against a defendant is insufficient if the defendant is named, but there are no factual allegations describing his or her personal involvement).

Plaintiff also attempted to present claims against Defendants Ikhanyan, Babich, and Poor concerning their roles as doctors or treating staff at Robinson, but his allegations against these individuals were insufficiently detailed to proceed related to catheter or urology care.  As to Ikhanyan, Plaintiff described a single appointment where she promised to schedule him for a urologist consult, and a single follow-up correspondence less than a month later when she indicated the appointment was approved but not yet scheduled.  This limited interaction is not enough to suggest deliberate indifference.  As to Dr. Babich, Plaintiff's only mention of Babich in relation to catheters is that Babich reiterated the catheter exchange rule.  Informing Plaintiff of a rule is not deliberate

indifference.  As to Dr. Poor, he mentions a cancelled visit, and Poor's general role as a doctor at the facility, but he does not point to any specific treatment decisions Poor made that were allegedly deficient.  The claims against all three providers related to catheter/urology issues are insufficient as pled and are dismissed for failure to state a claim.  As mentioned previously, Plaintiff's claim about his shoulder/neck/neurology issues will be severed into a separate case against Dr. Babich.

To the extent that Plaintiff intended to pursue a Due Process claim concerning any of his disciplinary proceedings mentioned in the complaint, his allegations are insufficient to make out a Fourteenth Amendment claim.  For example, Plaintiff alleges that Defendant Oberlink violated his rights when he presided over a disciplinary proceeding and found Plaintiff guilty without hearing his side of the story.  To establish a due process claim related to disciplinary proceedings, an inmate must demonstrate: (1) the deprivation of a liberty interest; and (2) the procedures he was afforded were constitutionally deficient.  *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019).  Plaintiff alleges that the procedures he was afforded were deficient, but he does not make any allegations about the consequences he received, so he has not established that a liberty interest was violated by the outcome of the proceedings.  Accordingly, Defendant Oberlink is dismissed without prejudice because Plaintiff failed to state a claim against him.

Likewise, his allegation that Defendant Williams gave him seven days of restriction on recreation time are insufficient because this is a short restriction and does not invoke a liberty interest.  Six months in segregation and six months' loss or restriction

of privileges—do not, without more, implicate a protected liberty interest.  *See Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (six-month disciplinary segregation alone); *Lekas v. Briley*, 405 F.3d 602, 605, 613 (7th Cir. 2005) (temporary loss of contact visitation and restricted commissary); *Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995) (six-month disciplinary segregation and demotion to C grade).

<u>Analysis</u>

**<u>Claim 1</u>**

Plaintiff alleges that on various occasions, Defendants Martin, Evans, Stephens, Glendenning, Eckel, Switzer, Gowin, and Deposa, participated in failing to provide him with needed medical supplies.  Specifically, Martin and Evans were involved with the procurement and ordering of catheters and lubricant jelly, but on a few occasions the prison ran out and he was forced to go without needed supplies.  Once he was unable to urinate for more than 26 hours, once he went more than 52 hours, and once he went days without lubricant jelly.  He also alleges that Defendants Glendenning, Gowin, Deposa and Stephens intermittently insisted he follow a policy or rule that required him to exchange used catheters for new catheters.  The policy was not enforced routinely, and he did not always have used catheters to exchange, so sometimes he was denied new supplies.

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component.  *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010).  A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate

indifference (i.e., a subjective standard).  *Id.*  To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference.  *Id.*  Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).  If an inmate alleges a delay in treatment, he must present verifying medical evidence that the delay, and not the medical condition itself, cause some harm.  *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013).  He must also show it was the defendant's actions or inaction that caused the delay in treatment.  *Walker*, 940 F.3d at 964.

Here, Plaintiff's allegations are sufficient to proceed beyond initial review against Defendants Martin, Evans, Stephens, Glendenning, Eckel, Switzer, Gowin, and Deposa. Plaintiff alleges that these individuals participated in the denial of needed medical supplies despite knowing that without the supplies he would be unable to urinate for hours, or days, on end.  He alleges that during the delays he suffered in pain.  At this preliminary juncture, these allegations are sufficient to proceed.

## Claim 2

Plaintiff also alleges that non-medical officials participated in denying or delaying his access to needed catheter supplies.  Specifically, he alleges Defendants Dodd, Williams, Lewis, Steadman, Bean, Rice, and Mason had roles in these issues.  Defendant Dodd received emergency grievances and correspondence about catheters and supplies,

and also spoke to Plaintiff about the exchanges or disposal of catheters during a cellhouse tour.  Defendants Steadman, Bean, and Mason were present when medical personnel refused supplies, and they did not intervene on Plaintiff's behalf.  Defendant Rice personally denied him supplies on June 3, 2022, while he was briefly in segregation, and Defendant Lewis failed to reprimand Rice when he learned of the issue after the fact.  Defendant Williams allowed Defendant Stephens to deny catheters one day, and delayed access the next day.

Non-medical prison officials are generally allowed to defer to treating professionals, unless such deference would amount to ignoring an inmate's serious need. *See e.g., Berry*, 604 F.3d at 440-41 (the law encourages non-medical security and administrative personnel to defer to the professional medical judgments of physicians and nurses without fear of liability).

Defendant Bean was allegedly present when three medical personnel (Stephens, Switzer and Eckel) informed Plaintiff that they were out of replacement catheters and Plaintiff would need to wash and re-use his existing catheters until replacements arrived. Bean allegedly said there was nothing else he could do, and that Plaintiff would need to follow the directives from nursing staff about his catheters.  As a non-medical official, this interaction falls squarely within *Berry¸* and is not a sufficient basis for liability, so Claim 2 against Bean is dismissed as insufficiently pled.

Claim 2 also fails against Defendant Lewis, whom Plaintiff alleges was merely present when he left segregation on June 3, 2022, and overheard that during that day Defendant Rice had withheld catheters.  As Lewis became aware of this issue, Rice was

handing Plaintiff catheters. There was nothing Lewis could have done to alter the situation, so he is not liable for this deprivation of catheters.

Plaintiff alleges that Defendant Williams acted similarly to Defendant Bean in so much as he was present and was informed that Defendant Stephens (a nurse) refused catheters on August 27 because Plaintiff did not bring catheters to exchange. Williams told Plaintiff that he needed to follow the exchange rule. Plaintiff argues that Williams had a duty to intervene in Stephens' behavior. Notably, Plaintiff does not allege that as a result of this incident he went without any catheters, or that he suffered any injury. The next day he had another encounter with Stephens and Williams about the catheter exchange rule, but Williams ultimately sent him back to the medical unit and directed Stephens to give him catheters. As a result of these limited interactions, and due to the fact that Plaintiff does not associate any injury with these encounters, Claim 2 is insufficient against Defendant Williams.

As to Defendants Steadman and Mason, Plaintiff alleges that these two were involved with the enforcement of the catheter exchange rule on September 28, when they both agreed with Defendant Glendenning that to get five new catheters, he would have to exchange used catheters. (Doc. 1 at 44-45). Plaintiff specifically alleges that Steadman refused to force Glendenning to dispense catheters on September 28, and that after he grieved the issue both Steadman and Mason (who was present and gave him the grievance form) began to act unfavorably towards him. While these interactions will be discussed in Claim 5, as a potential basis for a retaliation claim, these allegations are not sufficient to form an Eighth Amendment deliberate indifference to a medical need claim

against Steadman or Mason.  Steadman and Mason were involved as prison security or administrative personnel, and their role on September 28 was secondary to that of medical personnel who determined Plaintiff was ineligible to receive catheters without following the exchange rule.  There is no indication that they knew Plaintiff might suffer an adverse medical effect, and there is also no allegation Plaintiff suffered a discrete injury from this one interaction.  As such, Claim 2 is insufficient against Steadman and Mason.

As to Defendant Dodd, Plaintiff alleges that he spoke to Dodd during a cellhouse tour about the provision of a red biohazard disposal box being placed in the housing unit, but Dodd never followed through on this conversation.  This allegation does not amount to Dodd denying needed medical treatment, so it does not form the basis for an Eighth Amendment denial of catheters claim.   The Court will separately discuss Dodd's grievance responses in Claim 3.  Claim 2 is dismissed as insufficient against Dodd because there are not sufficient factual allegations to demonstrate she personally participated in the denial or delay of needed catheter supplies.

By contrast, Plaintiff alleges that Defendant Rice personally and intentionally withheld his catheters from approximately 7:30a.m. to 2:30p.m..  (Doc. 1 at 37-38).  The intentional withholding of needed medical supplies may be enough to state an Eighth Amendment claim, so Claim 2 may proceed against Defendant Rice.

<u>Claim 3</u>

Plaintiff alleges that he wrote multiple grievances about his access to catheters and medical treatment, but he did not get adequate responses.  The mere processing or

mishandling of a grievance by a prison official does not form the basis for a deliberate indifference claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (the alleged mishandling of grievances by persons who did not otherwise cause or participate in the underlying conduct states no claim). However, a prison administrator may not turn a blind-eye to correspondence that would alert them to a serious need. *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015).

The line between mere processing of a grievance, and between turning a blind-eye can be difficult to discern. The analysis, even at this early stage of initial review, requires a careful examination of the available facts. Plaintiff alleges that Defendant Dodd did not adequately assist him with catheter issues because she deemed a grievance on the topic a non-emergency, and presumably because she received other grievances, but his issues were not abated. The facts matter here. Plaintiff alleged that he submitted an emergency grievance about the lack of catheters on March 28, but on March 29 Defendant Dodd must have seen it and marked it a non-emergency. In the intervening time, Defendant Evans left the prison and secured a temporary supply of catheters for his use. Thus, by the time Defendant Dodd saw the 'emergency' grievance, the issue had already been addressed.

In later correspondence about the grievance on or around April 27, Defendant Dodd confirmed with Plaintiff that she had spoken with medical staff about catheter issues. Again, this interaction does not demonstrate that Dodd was turning a blind-eye to Plaintiff's needs. Plaintiff had follow-up communications with Dodd about catheter issues and policies during a cellhouse tour in September of 2022, but the details of these interactions do not suggest Dodd was turning a blind-eye to Plaintiff. She deferred to

medical staff for guidance on catheter issues, and to security staff for security issues. (Doc. 1 at 43).  On the whole, Plaintiff has not made adequate factual allegations to suggest a plausible claim against Defendant Dodd for turning a blind-eye to catheter related issues.  Claim 3 is insufficient against Defendant Dodd and will be dismissed without prejudice.

As to Defendants Ellington and Chenault, Plaintiff alleges that these individuals participated in the processing of one or more of his grievances, but he does not describe how their conduct amounted to turning a blind-eye or personally participating in underlying violations.  Plaintiff alleges that in July of 2022 he submitted a grievance about the catheter exchange rule, but he then suggests Chenault either did not respond by August 15, or her response was not satisfactory.  Neither of these allegations is sufficient for a claim against Chenault.  He alleges Ellington deemed his grievance received in April of 2022, and that she communicated with medical staff about the catheter issue, but that he did not find the response satisfactory.  Again, allegations of this nature are not sufficient for a claim, so Claim 3 is dismissed without prejudice as to Ellington.

Finally, Plaintiff alleges that Defendant Knauer turned a blind-eye to his plight when she returned a grievance of his for proper processing at the prison level, but this merely suggests that Knauer was following grievance rules, not that she intentionally intended or believed that harm would befall Plaintiff.  (Doc. 1 at 36).  Plaintiff insists that Defendant Knauer should have investigated his situation, but if he did not follow proper grievance procedures, Knauer was well within bounds to return his grievance for further

investigation at the prison prior to deeming it necessary to commence her own investigation.

In sum, Claim 3 is insufficient as to Defendants Dodd, Ellington, Chenault, and Knauer and it is dismissed without prejudice.

## Claim 4

Plaintiff alleges that Defendants Jeffreys, Pritzker, and Conn should be held liable for their roles in overseeing the provision of healthcare in the IDOC.  The general responsibility to oversee the operations of a correctional facility or to supervise its staff are not sufficient to create liability under § 1983.  *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009).  "Section 1983 does not establish a system of vicarious responsibility.  Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of the persons they supervise."  *Id.* at 593-94 (internal citation omitted).  Plaintiff does not have any allegations that suggest he personally alerted Jeffreys or Pritzker to issues with his own access to care, so he has not set forth sufficient facts to proceed against them.

Plaintiff alleges that he wrote to Defendant Conn on two occasions about his need for care.  On the first occasion, he alleges he recounted issues he was having "with service providers that's sub-contracted to provide Medical Care to the Inmates at Robinson CC." (Doc. 1 at 47).  He also sought the full names of certain people involved in his care, and he sought information about policies for treatment.  He got a generic response nearly three months later.  He wrote again on March 1, 2023, alleging that he was not getting consistent care, and sometimes security staff had to travel away from the prison to get

him catheters.  In the second letter, he alleges he also mentioned retaliation of Defendant Stephens.  He got another generic response.

These two communications to a high-level administrator are not sufficient to pursue a claim for personal liability against Defendant Conn.  The response letters that Plaintiff attached to his complaint are signed by Wexford's Risk Management Department, so it is not clear if Conn actually received and reviewed Plaintiff's letters. (Doc. 1-4 at 3, 27).  Even if Conn did receive the letters, a letter writing campaign alone is not sufficient to give rise to a claim of deliberate indifference.  *Burks*, 555 F.3d at 595-96. As pled, the allegations against Conn are insufficient and will be dismissed for failure to state a claim.

## Claim 5

Plaintiff alleges that at various times Defendants Williams, Steadman, Mason, Ellington, Stephens and Glendenning retaliated against him for seeking medical care or filing grievances related to his need for care.  He does not clearly explain when Ellington retaliated, so Claim 5 against Ellington is immediately dismissed as insufficient.

As to Defendant Williams, he suggests that Williams retaliated because he verbally reprimanded him for not following the catheter exchange program, and then the next day he brought him to the segregation unit and yelled or spoke sternly about the catheter exchange rules.  While these two encounters may have been unpleasant, Plaintiff ultimately admits that after the second exchange Williams directed another defendant to provide care.  In total, these limited interactions, which ended with Williams directing care, are not sufficient to suggest a retaliation claim.

By contrast, as to Steadman, Mason, Stephens and Glendenning, Plaintiff identified multiple issues which he characterized as retaliatory.  He indicated that not only did these defendants deny him care, but on some occasions they also issued him in disciplinary tickets as a form of retaliation for his grievances and requests for care.  At this preliminary juncture, Claim 5 is sufficient to proceed against Defendants Steadman, Mason, Stephens and Glendenning.

**Count 6**

Plaintiff alleges at various places throughout the complaint that some of his experiences may have been tied to polices or practices of Wexford.  Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself.  *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority.  *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).

Plaintiff's allegations against Wexford are sparse and conclusory in nature.  For example, after summarizing issues about access to catheters that he experienced with individual employees, he writes, "this must be a policy of Wexford's as a way to save money on supplies, or to accommodate the need when supplies are not ordered properly,

if at all." (Doc. 1 at 35). This allegation is a guess on Plaintiff's behalf and does not give any proof of a harmful policy maintained by Wexford. He further alleges that when he was informed that the catheter exchange rule would be enforced, he believed the enforcement of the rule was evidence of a "policy of the IDOC and Wexford, and being enforced through there employees, or a custom of habit by the nurses of an unauthorized act." (Doc. 1 at 39). He goes on to allege the catheter exchange rule could not actually be a standard practice of a medical provider because it would be unconstitutional. After his allegations about corresponding with Defendant Conn, Plaintiff alleges that Wexford fails to adequately staff Robinson. This allegation is not tied to his personal experience and does not suggest that he was harmed by a policy or practice of Wexford.

On the whole, Plaintiff's allegations against Wexford are generic and conclusory. He does not point to a discrete and explicit policy or custom, attributed to Wexford, that caused him harm. His complaint is generally much more focused on the actions of individual employees than it is on systemic problems. There are some exceptions. He makes passing mentions of policies or customs as described in the previous paragraph, and he also talks at the end of his complaint about the *Lippert* litigation, which the Court knows to be class action litigation about the provision of healthcare in IDOC. These few mentions are insufficient to plausibly suggest that Plaintiff's own access to care was hindered by a concrete policy or custom of Wexford.

Additionally, the Court notes that Plaintiff took issue both with prison staff, and in his complaint, with the existence of a policy that required inmates to exchange used catheters for new catheters. While the practice may have been unpleasant, the existence

of this policy did not cause Plaintiff any constitutional harm.  If anything, it was Plaintiff's own refusal to comply with this policy that caused him harm.  Though he reports that the policy was not always enforced, he obviously knew of its existence and consciously decided to disregard the policy on multiple occasions.  Plaintiff's own actions that hindered his access to care will not be attributed to Wexford.

On the allegations presented, the Court finds that Plaintiff has failed to plead an adequate claim against Wexford for maintaining a policy, custom, or practice that violated his constitutional rights.

## Severed Claim – Count 7

In addition to the allegations discussed above, the Court notes that Plaintiff has a discrete section of his complaint that is targeted at care for his neck/shoulder, and a pinched nerve.  (Doc. 1 at 31-32; 43).  He alleges that he was seen by Dr. Babich for this issue on September 29, 2022, and that after some delay, he had x-rays for the issue.  Dr. Babich determined that the issue was a pinched nerve, and he ordered a neurology consult, therapy, and a prescription medication.  Plaintiff discontinued the medication just a few weeks after starting it, because he believed the side effects were unacceptable. He alleges he never got the neurology consult or therapy.  He got a second set of x-rays on April 25, 2023, and he was again referred to an outside specialist.  However, he was released in late May of 2023 before he saw the specialist.  Plaintiff alleges that Defendants Dodd, Martin, and Conn should be held liable for failing to implement the physician's recommendation that he see a specialist.  He further attributes this issue to understaffing,

a lack of funding from Wexford, and overall deficiencies in Wexford/IDOC's healthcare system.  He alleges that as a result he needlessly suffered in pain for over eight months.

These allegations may be sufficient to proceed against some or all of the named defendants, but they are not related to the core contentions in the complaint, and they are made almost entirely against Defendants who will not proceed in this lawsuit.  The only exception is Defendant Martin.  Plaintiff will proceed here against Martin related to catheter supplies, but the neck/shoulder/pinched nerve issues are separate and distinct. The Court finds it appropriate to exercise its discretion to sever any claims about the medical issue into a separate lawsuit.  *See e.g., Dorsey v. Varga*, 55 F.4th 1094, 1107 (7th Cir. 2022) (a court may sever into a new case misjoinder claims).  Plaintiff will have the option to proceed in the separate lawsuit, or to voluntarily dismiss it.  The severance and creation of a new case should not be viewed as an opinion on the potential merits of any such claims related to the neck/shoulder/nerve issues.

## Motions

Plaintiff's Motion to Proceed *In Forma Pauperis* (Doc. 2) is **GRANTED**.  Plaintiff avers that he has essentially no source of appreciable income, so he qualifies to proceed without pre-payment of a filing fee.  28 U.S.C. § 1915(a)(1).  Plaintiff's Motion for Service (Doc. 3) is also **GRANTED**.  The Court will initiate service in this case by soliciting waivers of service from the defendants against whom claims are proceeding, as explained below.

## Disposition

For the reasons stated above, **Claim 7** against Dr. Babich, Mr. Martin, Rachel Dodd, Daniel Conn, and Wexford Health Sources, Inc., is severed into a new case.  In the new case, the Clerk is **DIRECTED** to file the following documents:

•     This Memorandum and Order;

•     The Complaint (Doc. 1);

•     The motion to proceed IFP (Doc. 2); and Motion for Service (Doc. 3).

In the new case, Plaintiff shall have the option to proceed on Claim 7 or to dismiss the case without prejudice and before he is required to pay a fee.  Claim 7 is **DISMISSED** from this case.

       **IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendants Martin, Evans, Stephens, Glendenning, Eckel, Switzer, Gowin, and Deposa; **Claim 2** survives against Defendant Rice; **Claim 5** survives Defendants Steadman, Mason, Stephens, and Glendenning.  By contrast, **Claim 2** is **DISMISSED** as to Defendants Dodd, Williams, Lewis, Steadman, Bean, and Mason; **Claim 3** is **DISMISSED** as to Dodd, Knauer, Ellington and Chenault; **Claim 4** is **DISMISSED** as to Defendants Jeffreys, Pritzker and Conn; **Claim 5** is **DISMISSED** as to Defendants Williams and Ellington; and **Claim 6** is **DISMISSED** as to Wexford Health Sources, Inc.

       All claims have been dismissed as to Defendants Daniel Conn, Wexford Health Sources, Inc., Jay Robert Pritzker, Rob Jeffries, Rachell Dodd, Debbie Knauer, Adewale Kuforiji, David Poor, Glenn Babich, Sheila Ikhanyan, Wendy Rodriguez, J. Williams, Benjamin Lewis, Jason Oberlink, Zach Bean, Lance Ellington, Kaycee Gosnell, Miramony

Rayburn-Chenault, Hilary Gurley, and M. Nord, so the Clerk of Court is **DIRECTED** to **TERMINATE** these parties.

The Clerk of Court is **DIRECTED** to prepare for Defendants: Phil Martin, Terri Evans, Kim Stephens, Teresa Glendenning, Penny Eckel, Renae Switzer, Jane Doe Gowin, John Doe Deposa Mariah Welch Steadman, John Doe Rice, and Caleb J. Mason: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 7 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: December 20, 2023

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.